# United States Court of Appeals
## For the First Circuit

No. 19-2151

UNITED STATES,

Appellee,

v.

ANGEL MIGUEL CARRASQUILLO-SÁNCHEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Howard, Chief Judge,
Barron, Circuit Judge,
McAuliffe,* District Judge.

Rafael F. Castro Lang for appellant.
Francisco A. Besosa-Martínez, with whom W. Stephen Muldrow,
United States Attorney, and Mariana E. Bauzá-Almonte, Assistant
United States Attorney, Chief, Appellate Division, were on brief,
for appellee.

August 16, 2021

* Of the District of New Hampshire, sitting by designation.

BARRON, **Circuit Judge**.   Angel Miguel Carrasquillo Sánchez ("Carrasquillo") received a forty-eight-month prison sentence after entering a guilty plea to one count of firearm possession in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). Carrasquillo challenges the procedural and substantive reasonableness of that sentence.  Because we conclude that the District Court plainly erred in failing to provide a sufficient case-specific explanation for its upward variance from the applicable sentencing range under the United States Sentencing Guidelines, we vacate Carrasquillo's sentence and remand for resentencing.

## I.

Carrasquillo was arrested by local police officers on May 21, 2019, in the afternoon in Loíza, Puerto Rico, following a traffic stop.  At the time of his arrest, Carrasquillo was travelling in a car with three other individuals -- among them his cousin.  Carrasquillo was in the possession of a Glock pistol that had been modified to fire automatically.  That firearm was loaded with twenty-nine rounds of ammunition.  Five magazines that contained an additional 128 rounds of ammunition lay next to that firearm in the car.  Carrasquillo's cousin, too, carried a loaded firearm and additional magazines and rounds of ammunition.

On May 30, 2019, a federal grand jury returned an indictment against Carrasquillo and his cousin.  The indictment

charged Carrasquillo with possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) (Count One) and with possession of a firearm by a person "who is an unlawful user of . . . any controlled substance" in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2) (Count Two).

Carrasquillo entered a guilty plea on July 24, 2019, to the second of these two counts. In his plea agreement, he admitted that he was an unlawful user of a controlled substance because he had been "a habitual user of marihuana and smoke[d] 3 joints of marihuana a day since he was 17 years old." Carrasquillo and the government also agreed to advise the District Court that for purposes of calculating Carrasquillo's Guidelines sentencing range ("GSR"), his Total Offense Level ("TOL") was seventeen. They further agreed that they would each recommend a prison sentence of twenty-four months.

At the sentencing hearing on October 21, 2019, the District Court followed the plea agreement's advisory calculation of Carrasquillo's TOL. It did so by finding first that Carrasquillo's Base Offense Level ("BOL") was twenty pursuant to U.S.S.G. § 2K2.1(a)(4), in part because his offense involved a "semi-automatic weapon that is capable of accepting a large capacity magazine or a firearm described in 26 [U.S.C.] § 5845[(a)]." It then applied a three-level reduction pursuant to U.S.S.G. § 3E1.1(a) and (b). The District Court also found that

- 3 -

Carrasquillo had no prior known arrests or convictions.  Based on Carrasquillo's TOL and criminal history, the District Court calculated Carrasquillo's GSR to be twenty-four to thirty months of imprisonment.

The District Court, however, imposed a variant sentence of forty-eight months -- eighteen months more than the top of the GSR and twice the length of the sentence recommended by both parties.  Carrasquillo timely appealed.

## II.

Carrasquillo argues on appeal that his forty-eight-month prison sentence is both procedurally and substantively unreasonable.  We review his claim of procedural error first.  See Gall v. United States, 552 U.S. 38, 51 (2007).

Carrasquillo argues that the District Court "failed to properly apply the 18 U.S.C. [§ ]3553(a) factors" and "based its sentence on clearly erroneous facts."  That is so, he contends, because the only individualized finding on which the District Court relied for its upward variance was one that it necessarily had already taken into account in its calculation of the GSR -- Carrasquillo's "possession of a machinegun and an extended magazine."  In so arguing, he acknowledges that the District Court, in explaining the variance, also relied on what it described as "the problem of criminality in P.R." and on several specific instances of gun violence in the Commonwealth.  But, Carrasquillo

- 4 -

argues, that aspect of its explanation cannot suffice to render the explanation sufficient because the specific incidents were "totally disassociated [from] his offense conduct" and the concern about the general problem of crime was not adequately linked to his particular conduct beyond his having possessed a machine gun.

The government contends that Carrasquillo did not preserve this procedural challenge during the sentencing hearing and that we should therefore review the District Court's explanation of its variant sentence only for plain error.  We agree.

During the sentencing hearing, Carrasquillo's counsel voiced only a single objection to the variant sentence.  That objection was "to the length of the sentence imposed."  His objection thus appeared to concern only the substantive unreasonableness of his sentence due to its length and independent of the adequacy of the explanation offered by the District Court in support of it.  Cf. United States v. Rivera-Berríos, 968 F.3d 130, 134 (1st Cir. 2020) (concluding that the defendant preserved his procedural claim below because "appellant's counsel made clear" not only "that he believed that the sentence was 'excessive,'" but also "that the court had not articulated any cognizable grounds that would support an upward variance").  For that reason, we review his claim of procedural error for plain error.  See United States v. Perretta, 804 F.3d 53, 57 (1st Cir.

2015); United States v. Contreras-Delgado, 913 F.3d 232, 238 (1st Cir. 2019).

Under this standard of review, a defendant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Perretta, 804 F.3d at 57 (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)). We find that Carrasquillo satisfies all these requirements.

We start with the basics. A district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Gall, 552 U.S. at 50. When a district court varies from the GSR, as it did in this case, moreover, we "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id.; see also United States v. Ofray-Campos, 534 F.3d 1, 43 (1st Cir. 2008) ("The farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed." (quoting United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005) (Posner, J.) (ellipses in original)).

Here, the District Court imposed an upward variance of eighteen months from the applicable GSR of a prison sentence of up to thirty months.  That is a significant deviation.  So, the key issue concerns the sufficiency of the District Court's explanation for that variance, given its magnitude.

The District Court did express special concern that Carrasquillo had bought a firearm "that had been modified to shoot automatically" -- "[w]hat we call a machine gun" -- even though "he admitted that there are no threats against him."  The District Court added "that machine guns [are] one of the most dangerous weapons in terms of [their] firing capabilities."

It is clear, however, that the possession of the machinegun alone could not justify such a variance.  We have plainly stated that "[w]hen a § 3553(a) consideration is already accounted for in the guideline range, a sentencing Court 'must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation.'" United States v. Rivera-Santiago, 919 F.3d 82, 85 (1st Cir. 2019) (quoting United States v. Guzman-Fernandez, 824 F.3d 173, 177 (1st Cir. 2016)). Carrasquillo's GSR had been calculated pursuant to U.S.S.G. § 2K2.1(a)(4) based in part on the finding that he possessed a "semi-automatic weapon that is capable of accepting a large capacity magazine or a firearm described in 26 [U.S.C.]

§ 5845[(a)]."  Thus, because the concerns that the District Court highlighted about the dangers posed by machine guns and the defendant's lack of need for such a weapon "are universal in their application, and we have no reason to believe that they were not factored into the mix when the Sentencing Commission set the base offense level for the offense of conviction," Rivera-Berríos, 968 F.3d at 136, Carrasquillo's possession of a machinegun alone could no more justify this variant sentence than it could justify the one at issue in Rivera-Berríos.

After all, in that case, too, the district court expressed the concerns that machineguns are "highly dangerous and unusual," can fire over a thousand rounds per minute, and exist largely "on the black market" as explanations for its variance. Id.  Yet, we held that those concerns about machineguns could not supply the basis -- at least on their own -- for an upward variance of the same magnitude as here and concluded for that reason that the district court failed to explain why the defendant's machinegun possession "was entitled to extra weight."[1]  Id.

---

[1]    The District Court did also consider Carrasquillo's "history of substance abuse, specifically marijuana, which he has used since age 17.  That is, for the past five years."  But, insofar as the District Court viewed this personal characteristic as an aggravating factor, it had already taken account of that factor when it calculated Carrasquillo's GSR pursuant to U.S.S.G. § 2K2.1(a)(4) and 18 U.S.C. § 922(g)(3) based on Carrasquillo's pleading guilty in part to being "an unlawful user of . . . any controlled substance."  And, the District Court nowhere explained why that element was nevertheless entitled to extra weight.

The government nonetheless contends that the District Court adequately explained why this case falls outside of the heartland of the applicable GSR because the District Court did not rely solely on those expressions of concern about the dangers associated with machineguns in explaining the variant sentence. The government argues that the District Court also pointed to community-based considerations of gun violence in Puerto Rico in explaining why "the guidelines do not reflect accurately the seriousness of the offense."

It is true that "[g]eographical considerations can be relevant at sentencing, as 'the incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence.'"  United States v. Ortiz-Rodríguez, 789 F.3d 15, 19 (1st Cir. 2015) (quoting United States v. Flores-Machicote, 706 F.3d 16, 23 (1st Cir. 2013)); see also United States v. Rivera-González, 776 F.3d 45, 50-51 (1st Cir. 2015) (finding "the high incidence of violent crime in Puerto Rico" to be an appropriate consideration at sentencing).  In addition, the District Court did not simply rely on the community-based factors to the exclusion of any consideration of the individual circumstances of this defendant.  As the government rightly points out, the District Court did attend to the various mitigating factors that the defendant put forth -- among them, his age, place

of residence, education, employment, medical history, and lack of prior known arrests and convictions.

But, Carrasquillo pointed to those mitigating factors in the course of arguing for a more lenient sentence than the one he received -- and, indeed, a more lenient one than the one recommended by the top end of the GSR itself -- as both he and the government sought a sentence at the very bottom of the GSR of just twenty-four months. There is no sense in which the District Court, by considering those mitigating factors, was offering an individualized basis for the upward variance that it imposed.

Thus, the critical question is whether the District Court's reliance on the state of violence associated with machineguns in Puerto Rico could support that upward variance, even though the dangers posed by machineguns could not. Carrasquillo argues that prior precedent precluded the District Court from justifying the variance wholly on its observations about the state of things in Puerto Rico, because the District Court needed to anchor its consideration of Puerto Rico's high incidence of gun violence as part of its § 3553(a) analysis "in individual factors related to the offender and the offense," Rivera-González, 776 F.3d at 50, and failed to do so.

As we explained in Ortiz-Rodríguez, "'the section 3553(a) factors must be assessed in case-specific terms,' and a sentencing court's 'appraisal of community-based considerations

does not relieve its obligation to ground its sentencing
determination in individual factors related to the offender and
the offense.''"  789 F.3d at 19-20 (internal citations omitted;
first quoting Flores-Machicote, 706 F.3d at 23; and then quoting
Rivera-González, 776 F.3d at 50).  Because we then found that the
district court had not grounded its community-based considerations
in "case-specific terms," despite its consideration of mitigating
factors, we concluded that the district court procedurally erred
in failing to explain adequately its upward variance by fifteen
months.  Id. at 19.

     Likewise, we held in Rivera-Berríos, 968 F.3d at 137,
that "[u]nmoored from any individual characteristics of either the
offender or the offense of conviction, . . . [the district court's
community-based concerns] cannot serve as building blocks for an
upward variance" and concluded that the district court there
procedurally erred because it "constructed no such mooring."  Id.
And that was so, we made clear, because a "case-specific nexus"
was "totally lacking" between the community-based considerations
in Puerto Rico that had been invoked to support the upward variance
and the nature of the defendant's conduct beyond his possession of
a machinegun.  Id. at 136.

     Here, the District Court found that "the type of this
possession of weapons is what basically has the society in a state
of siege," and that "in Puerto Rico right now, [these types of

weapons are] in the hands of individuals without licenses that are being used . . . in public places in broad daylight." The District Court elaborated on this explanation by giving nine examples of particular instances of machinegun shootings in Puerto Rico during the preceding months and by comparing Puerto Rico's crime rate with that of large U.S. cities and countries in Central America, South America, and the Caribbean. It then concluded: "I don't think that the guidelines have a way to reflect the seriousness of the possession of this type of weapon and the harm that is causing in Puerto Rico society. . . . Therefore, the Court understands that there's a need for a variant sentence."

The government contends that some of the specific examples of machinegun shootings in Puerto Rico were anchored in individual factors related to Carrasquillo and his offense. That is so, it argues, because some of the examples, just like Carrasquillo's offense, involved the possession of machineguns during daylight hours in public, and sometimes specifically inside vehicles on public roads.

The District Court was clear, however, that "the driving force behind the upward variance," Rivera-Berríos, 968 F.3d at 135, was, in its own words, "the possession of this type of weapon" itself. Thus, here, just as in Ortiz-Rodríguez and Rivera-Berríos, the District Court considered the high incidence of gun violence in Puerto Rico "unmoored from any individual characteristics of

either the offender or the offense of conviction . . . [its community-based concerns] cannot serve as building blocks for an upward variance." Rivera-Berríos, 968 F.3d at 137.[2]

The government does also argue that certain facts referenced by the Presentencing Report ("PSR"), namely that Carrasquillo possessed an additional five magazines and 128 rounds of ammunition at the time of his arrest, and that his cousin too possessed additional magazines and ammunition in the same car, should be used to supplement the District Court's explanation and that these facts provides an additional basis on which we should conclude that its explanation was adequate. But, while "a court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did," such inferences must be anchored in "what the judge did." United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc), abrogated on other grounds by Rita v. United States, 551 U.S. 338 (2007). And here, nothing in the District Court's summary of the facts and weighing of the sentencing factors

---

[2]    The government at one point suggests that we should understand the District Court's community-based considerations as a policy disagreement with the Guidelines, as permitted by Kimbrough v. United States, 552 U.S. 85 (2007). But, the District Court nowhere indicated that it was relying on those community-based considerations for a purpose other than to "inform[] and contextualize[] the relevant need for deterrence" as part of its § 3553(a) analysis. Ortiz-Rodríguez, 789 F.3d at 19 (quoting Flores-Machicote, 706 F.3d at 23).

indicates that it relied for its variant sentence on Carrasquillo's additional magazines and ammunition.

Prior to imposing the forty-eight-month sentence, the District Court only mentioned that Carrasquillo possessed a "large magazine with capacity for 31 rounds." And its express reference to the PSR was limited to the statements that it had examined the PSR and that it had found the PSR's "guideline computation" to be correct. It was only when enumerating the forfeiture conditions after it had already imposed the sentence of imprisonment that the District Court mentioned the additional magazines and rounds as well. Nor did the government argue below to the District Court that those additional magazines and rounds warranted a variant sentence. Indeed, as we have noted, the government recommended a low-end guideline sentence of twenty-four months.

Defendants are entitled to a "sufficiently particularized [and] compelling" explanation when they are subject to a significant upward variance. Ofray-Campos, 534 F.3d at 43. Here, the District Court provided no such explanation because all the factors on which it relied for its upward variance were either already factored into Carrasquillo's GSR or not specific to his case. Cf. United States v. Vázquez-Martínez, 812 F.3d 19, 24-25 (1st Cir. 2016) (finding no plain error because the district court explained its upward variance based not only on "factors already included in the Guidelines calculations," such as the defendant's

"criminal history and drug addiction," but also on his "subsequent probation revocation, his prior adult arrest, and the circumstances surrounding his current offense," including that he "kept his machinegun . . . in a residence he shared with three minor children").  In failing to provide an adequate explanation, the District Court clearly and obviously erred.  And the resulting upward variance affected Carrasquillo's substantial rights and seriously impaired the fairness of the judicial proceedings.  See United States v. Rivera-Gonzales, 809 F.3d 706, 712 (finding that imposition of an upward variance without adequate explanation impairs "the fairness, integrity, or public reputation of the judicial proceedings" (internal quotation marks omitted) (quoting United States v. Perazza-Mercado, 553 F.3d 65, 79 (1st Cir. 2009))).  We therefore conclude that the District Court committed plain procedural error when sentencing Carrasquillo to forty-eight months.  Having thus concluded, we need not reach Carrasquillo's claim of substantive error.  See United States v. Miranda-Díaz, 942 F.3d 33, 39 (1st Cir. 2019).

We close, though, with a final observation.  We recognize that district courts must be given some leeway in not only selecting a sentence but also explaining their reasons for having selected it.  That is especially so when, as here, no objection has been made by the defendant to the district court that it has failed to offer an adequate explanation.

We recognize, too, both that there has been a mass of appellate rulings from our circuit regarding sentencing explanations and their requirements prior to the sentencing that occurred here and that our decision in Rivera-Berríos postdated not only that mass of rulings but also the sentencing in this very case. The District Court thus did not have the benefit of the decision of ours that is clearest in specifying what an explanation for a variance must entail.

Nonetheless, we had decided Ortiz-Rodríguez prior to this sentencing. And Rivera-Berríos, we think, now makes it perfectly clear that we meant what we had previously said about the obligation of district courts when varying upward to offer explanations for the deviation that are commensurate in their depth with the magnitude of that deviation. Thus, even if at the time this sentence was handed down, the inadequacy of the explanation was not clear or obvious error, it is clear and obvious that such an explanation does not suffice under our extant precedent. For that reason and for the reason that the federal sentencing regime aims to "bring about greater fairness in sentencing through increased uniformity," Rita, 551 U.S. at 354, resentencing is required.

## III.

For the foregoing reasons, we order Carrasquillo's sentence to be **vacated** and **remand** for resentencing.